1

**CABALLERO & GETTLEMAN LAW OFFICE, INC**.
Jonathan Che Gettleman, SBN 243560
2
Elizabeth M. Caballero, SBN 240249
223 River Street, Suite D
3
Santa Cruz, California 95060
TELEPHONE: 831-427-2658
4
FACSIMILE:  831-515-5228

5

Attorneys for Plaintiff,
6
TYLER LUTTRELL

7

UNITED STATES DISTRICT COURT
8
FOR THE NORTHERN DISTRICT OF CALIFORNIA
9

10

| TYLER LUTTRELL. | Case No. |
|---|---|
| Plaintiffs, | **COMPLAINT FOR VIOLATION OF CIVIL RIGHTS WITH PENDANT STATE LAW CLAIMS.** |
| vs. | |
| COUNTY OF SANTA CRUZ, a municipal corporation; JAMES HART, in his capacity as Sheriff for the COUNTY OF SANTA CRUZ; VICTOR MORA, an individual, DOES 1-25, | **JURY TRIAL DEMANDED** |
| Defendants. | |

**JURISDICTION**

1.     This action arises under Title 42 of the United States Code, sections 1983 and 1988. Jurisdiction is conferred upon this Court by Title 28 of the United States Code, sections 1331 and 1343 and 42 U.S.C. Section 12188(a).  This Court also has supplemental jurisdiction over Plaintiff's state law causes of action under 28 U.S.C. Section 1367.

2.     Venue is proper in the Northern District of California pursuant to 28 U.S.C. section 1391(b) because the unlawful acts and practices alleged herein occurred in the County of Santa Cruz,

LAW OFFICES
223 RIVER STREET
SUITE D
SANTA CRUZ, CA
95060

1.

COMPLAINT FOR VIOLATION OF CIVIL RIGHTS AND DAMAGES

California, which is within this judicial district.

3.      This Court has jurisdiction to grant the declaratory relief requested pursuant to 28 U.S.C. §2201 and Federal Rules of Civil Procedure, Rule 57.

**PARTIES**

4.      Plaintiff TYLER LUTTRELL is a citizen of the United States and at all times relevant to this lawsuit resided in the County of Santa Cruz in California.  All actions relevant to this lawsuit occurred in the Santa Cruz County Jail.

5.      Defendant COUNTY OF SANTA CRUZ ("COUNTY") is a municipal corporation, duly organized and existing under the laws of the State of California. Defendant COUNTY operates and is responsible for the actions, omissions, policies, procedures, practices and customs of its various agents and agencies, including the Santa Cruz County Sheriff's Department and the Santa Cruz County Jail and their agents and employees.

6.      At all times mentioned herein, Defendant JAMES HART ("HART") was employed by Defendant COUNTY as Sheriff for the COUNTY.   He is being sued in his official capacity as Sheriff for the COUNTY OF SANTA CRUZ.

7.      Defendant VICTOR MORA ("DEPUTY MORA") was at all relevant times employed by the Santa Cruz Sheriff's Department as a jail guard.

8.      Defendant DOE 1 ("DEPUTY MOYA") was at all relevant times employed by the Santa Cruz Sheriff's Department as a jail guard.

9.      Plaintiff is ignorant of the complete true names and capacities of Defendant DOES 1 through 15, inclusive, and, therefore, sue these defendants by such fictitious names.  Plaintiff is informed and believes and thereon alleges that each Defendant so named was employed by Defendant COUNTY at the time of the conduct alleged herein.  Plaintiff alleges Defendants DOES 1 through 15, and each of them were deliberately indifferent to TYLER LUTTRELL's safety, failed to appropriately classify him, failed to protect him from very dangerous inmates known as such to jail classification staff, failed to conduct routine safety checks, failed to follow the mandates of the

LAW OFFICES
223 RIVER STREET
SUITE D
SANTA CRUZ, CA
95060

COMPLAINT FOR VIOLATION OF CIVIL RIGHTS AND DAMAGES

Prison Rape Elimination Act (PREA), violated his civil rights, wrongfully caused him to be sexually violated, and/or encouraged, directed, enabled and/or ordered other defendants to engage in such conduct. Plaintiffs will amend their complaint to state the names and capacities of DOES 1 through 15, inclusive, when they have been ascertained.

10.    Plaintiff is ignorant of the true names and capacities of Defendant DOES 16 through 25, inclusive, and therefore sues these defendants by such fictitious names.  Plaintiff is informed and believes and thereon alleges that each Defendant so named was employed by Defendant COUNTY at the time of the conduct alleged herein.  Plaintiff alleges that each of Defendant DOES 16-25 were responsible for the training, supervision and/or conduct of the Jail employees and/or agents involved in the conduct alleged herein.  Plaintiff alleges that each of Defendant DOES 16 through 25 was also responsible for and caused the acts and injuries alleged herein.  Plaintiff will amend his complaint to state the names and capacities of DOES 16 through 25, inclusive, when they have been ascertained.

11.    For state law causes of action, Plaintiff is required to comply with statutory tort claim requirements. Plaintiff has complied with all applicable requirements.  Plaintiff timely presented his tort claim to the Clerk for the County of Santa Cruz on April 2, 2019, which was denied by letter and Notice of Rejection on May 15, 2019.

## PRELIMINARY ALLEGATIONS

12.    The COUNTY is a public entity and is sued under Title 42 U.S.C. §§ 1983 and 1988 for violations of the Eighth and Fourteenth Amendments of the United States Constitution, California state law, the California Tort Claims Act, and the Government Code for the acts and omissions of COUNTY OF SANTA CRUZ SHERIFF'S DEPARTMENT, DEPUTY VICTOR MORA, DOE 1 ("DEPUTY MOYA"), and DOES 2-25, (Collectively referred to herein as "DEFENDANTS") and each of them, who at the time they caused Plaintiff's injuries and damages were duly appointed, qualified and acting officers, employees, and/or agents of COUNTY acting

LAW OFFICES
223 RIVER STREET
SUITE D
SANTA CRUZ, CA
95060

3.

COMPLAINT FOR VIOLATION OF CIVIL RIGHTS AND DAMAGES

within the course and scope of their employment and/or agency.  In engaging in the conduct described herein, DEFENDANTS, inclusive, exceeded the authority vested in them as public employees under the United States and California Constitutions and as Sheriff Deputies employed by Defendant COUNTY.

13.     Plaintiff alleges that the conduct of each defendant deprived TYLER LUTTRELL of his constitutional rights to be free from excessive punishment and violations of his due process, his constitutional right to adequate safety, as well as custodial care and supervision, and caused TYLER LUTTRELL to suffer grievous harm and physical injuries related to repeated and extended sexual assaults by multiple inmates while housed in the Santa Cruz County Jail.

14.     Each of the Defendants caused and is responsible for the unlawful conduct and resulting harm by, inter alia, personally participating in the conduct, or acting jointly and in concert with others who did so, by authorizing, acquiescing, condoning, acting, omitting or failing to take action to prevent the unlawful conduct, by promulgating or failing to promulgate policies and procedures pursuant to which the unlawful conduct occurred, by failing and refusing to initiate and maintain proper and adequate policies, procedures and protocols, and by ratifying and condoning the unlawful conduct performed by agents and officers, deputies, medical providers and employees under their direction and control.

15.     Whenever and wherever reference is made in this Complaint to any act by any Defendant, each Defendant was the agent of the others, was acting within the course and scope of this agency, and all acts alleged to have been committed by any one of them shall also be deemed to mean the acts and failures to act of each Defendant and DOE Defendants individually, jointly or severally.

///

///

LAW OFFICES
223 RIVER STREET
SUITE D
SANTA CRUZ, CA
95060

4.

COMPLAINT FOR VIOLATION OF CIVIL RIGHTS AND DAMAGES

///

## STATEMENT OF FACTS

### INTRODUCTION

16.     On or about October 12, 2018, MR. LUTTRELL was repeatedly sexually assaulted by his two cell-mates in their shared cell for a period of approximately thirteen (13) hours.  The assault culminated in the perpetrating inmates tattooing MR. LUTTRELL's face with the letters "WFO" ("Wide Fucking Open").  This occurred while MR. LUTTRELL was the third inmate in a two inmate cell.  On or about October 11, 2018, jail staff placed everyone in this cell on 24 hour lockdown without prior notice for multiple days.

17.     At the time of the assault, MR. LUTTRELL was apparently being group punished for the dangerous and assaultive behavior by his cellmate, SEAN OLIVER, exclusively, on a separate inmate.  MR. LUTTRELL was not accused of having any involvement in the offense leading to his complete lock down.   That same cellmate, SEAN OLIVER, along with the third cellmate, BRANDON LOVE, eventually tortured and sexually assaulted MR. LUTTRELL with both their own body parts and with foreign objects at their disposal over this 13 hour period.  MR. LUTTRELL was at all times under the care of the Santa Cruz County Jail.  Clear systematic breakdowns occurred in jail policies and procedures that lead to the attack on MR. LUTTRELL.  This attack was highly foreseeable and preventable and occurred despite MR. LUTTRELL's pleas to be removed from the cell prior to the incident.

### MR. LUTTRELL'S HOUSING

18.     MR. LUTTRELL is an accomplished journeyman millwright by trade.   He completely fell apart when his mother died of a drug overdose prior to his incarceration.  He became homeless and was living in Santa Cruz.  MR. LUTTRELL was a proud man and considered himself a capable self-defender when necessary.  Prior to the incident, he had been to the Santa Cruz County

LAW OFFICES
223 RIVER STREET
SUITE D
SANTA CRUZ, CA
95060

COMPLAINT FOR VIOLATION OF CIVIL RIGHTS AND DAMAGES

jail on more than one occasion and was familiar with the jail culture.

19.     On September 29, 2018, TYLER LUTTRELL was stopped by Santa Cruz Sheriff's Deputies for failing to have a light on his bicycle.  MR. LUTTRELL was homeless at that point. Upon searching MR. LUTTRELL, officers found that he wore a small knife as a tool openly on his belt.  He disclosed the knife's presence to the officers upon request.  He was arrested for a probation violation for possessing a weapon and was booked into the Santa Cruz County jail.  MR. LUTTRELL was sentenced to 90 days for this probation violation.  At the time of the assault at issue, MR. LUTTRELL had less than one month left to serve and was eagerly awaiting a promised a transfer to the less secure and roomier Roundtree facility.

20.     During this and prior stays at the Santa Cruz County jail, MR. LUTTRELL had been designated a trustee, meaning he was allowed out of his unit to work and help with the functioning of the jail based on his demonstrated good behavior.  He was typically housed in the P-Unit with other trustees.  As a trustee, MR. LUTTRELL was also very knowledgeable about the inner workings of the jail and inmate dynamics.  However, during this recent period of incarceration, MR. LUTTRELL was housed in F Unit, a general population unit.  He was awaiting the promised transfer to the minimum-security Roundtree facility in Watsonville that was supposed to come the day he was assaulted.  F-Unit is terribly overcrowded.  We will discuss the jail overcrowding issues in greater detail further into the complaint.

21.     Inmates in Santa Cruz County Jail are now issued iPads for various reasons including safety.  Money can be put on these iPads that correspond with benefits such as music or ordering commissary.  MR. LUTTRELL was issued an iPad code that did not function.  He made multiple requests for a functioning iPad code during the time that he was incarcerated before the incident.  All those requests went unanswered until the time of MR. LUTTRELL's release on approximately October 18, 2018.

LAW OFFICES
223 RIVER STREET
SUITE D
SANTA CRUZ, CA
95060

22.   MR. LUTTRELL was housed with a serious offender named BRANDON LOVE in cell/room F-22 of the F Unit. MR. LOVE had been to prison multiple times for violent felonies. On information and belief, he was on his way to prison for very serious offenses, including home invasions and violent felonies. On our information and belief, Mr. LOVE had previously been found with over a kilo of narcotics while incarcerated.

23.   On or about Wednesday October 10, 2018, SEAN OLIVER was transferred from the Watsonville facility for assaulting another inmate. SEAN OLIVER was also housed in F-Unit room 24. Sometime thereafter, SEAN OLIVER was moved to cell F-22 because, on plaintiff's information and belief, there was a video camera shot of that door so guards could "keep an eye on him," meaning Mr. Oliver  MR. OLIVER was moved into that two-bunk cell with MR. LUTTRELL and MR. LOVE. MR. LUTTRELL was thereafter forced by his cellmates to leave his bunk and sleep on the floor in front of the toilet.

24.   MR. OLIVER and MR. LOVE were friends and prison confederates. Of the two, SEAN OLIVER was by far the worst. He had been convicted of very serious violent criminal acts, including more than 19 felonies. He was a well-known white supremacist gang member/leader, a "Westsider." He was the F-Unit's "shot caller" or "key holder" for Caucasian inmates. (More information about the role of "shot caller/key holders" will be provided in a following section.)

25.   MR. LUTTRELL immediately knew that this was a very dangerous situation for him. He complained repeatedly to a jail guard, DOE #1 "Deputy Officer Moya," that he should not be in a cell with MR. OLIVER and MR. LOVE for reasons of his own safety. All three inmates also complained repeatedly about having three people in the room generally as it related to crowding. Deputy Baldwin informed MR. OLIVER and MR. LOVE that they should stop complaining, threatening that otherwise they would be immediately transferred to West Housing-gang/maximum wing (where they belonged). Nothing ever came of it. MR. LUTTRELL complained to several

COMPLAINT FOR VIOLATION OF CIVIL RIGHTS AND DAMAGES

other guards that he should not be in the cell with MR. OLIVER and MR. LOVE.  Despite his

reasonable classification concerns, no jail official ever responded or acknowledged his concern.

26.     The next morning in cell room F-22 before breakfast MR. OLIVER broke out of his

cell and assaulted a mentally ill inmate in the tier below for making too much noise during the night.

One skill MR. OLIVER had apparently learned during his serial incarcerations was how to "pop" the

lock on cell doors with two spoons.  In order to assault the mentally disabled gentleman on the tier

below, MR. OLIVER popped his cell door and then popped the other inmate's cell door.  When the

jail officials learned of the assault, they responded by locking down the entire cell containing MR.

OLIVER, MR. LOVE and MR. LUTTRELL.  This lockdown came without any notice or process.

The lockdown sent MR. OLIVER into a rage.  "Locking down" means that the inmates are only

permitted one hour per 24 hour period to be out of their cell for a supervised shower.  On the

following night (Friday), they did not even get the one hour out of their cell.  MR. LUTTRELL was

locked down for no apparent reason other than he happened to be assigned to MR. OLIVER's cell.

In the 48 hours that followed, with no contact from any jail personnel, MR. LUTTRELL was

horribly violated.

27.     MR. LUTTRELL was locked in the cell for 48 hours before the incident with no way

to contact guards.  Just prior to that period, MR. LUTTRELL had a prescheduled dental appointment

and was released Friday morning to go to the appointment.  After his appointment, MR. LUTTRELL

was released back into the open day room of F-Unit. He tried to talk to several officers about his

housing assignment and was summarily brushed off.  After attempting to communicate with guards,

MR. LUTTRELL spent the day trying not to be noticed by jail staff so as not to get locked back in

F22.  When lights out came at 8pm on October 12, 2018, MR. LUTTRELL noticed that two cells on

the bottom tier and three or four dayroom bunks were vacant.  He sat on one of the beds and said to

the guard present something to the effect of "I can just sleep here."  MR. LUTTRELL again

COMPLAINT FOR VIOLATION OF CIVIL RIGHTS AND DAMAGES

expressed concern that he was unsafe in cell F-22 with MR. OLIVER and MR. LOVE.   MR.
LUTTRELL's request was denied and he was put back in total lock-down confinement with MR.
LOVE and MR. OLIVER.   Both MR. LOVE and MR. OLIVER wanted answers as to why MR.
LUTTRELL was out of the cell so long while they were locked down.   Both MR. LOVE and MR.
OLIVER were angry and suspected that MR. LUTTRELL may have snitched on MR. OLIVER
while he was out of the cell about the assault (MR. LUTTRELL had not), which occurred earlier that
morning.   MR. OLIVER also became increasingly angry because he could not "call shots" from his
completely locked cell and for that reason inmates were not obeying his commands.   MR. OLIVER
spent much of Friday night literally trying to communicate through the door to direct other inmates
to carry out assaults on still other inmates on his behalf.   He tried to pop the cell door for hours.
Through Friday night, MR. LUTTRELL continued to try to signal corrections officers to no avail as
his cellmates became more and more aggressive.   MR. LUTTRELL was thereafter just hoping to
make it unharmed to Saturday when he was scheduled to transfer to the Roundtree facility.

29.     In addition to not having a functioning iPad code, MR. LUTTRELL's cell did not
have a functioning emergency security button.   The button was visibly damaged, disabled and
jammed by MR. LOVE and MR. OLIVER with toothpaste as soon as MR. OLIVER arrived in the
cell that Wednesday.   It would have been obvious to any guard conducting a reasonable inspection
of the cell.   It is also common knowledge to jail staff and inmates that the emergency security
buttons often do not work in most of the cells of the F-Unit and for the few that do function, officers
rarely respond if they are pushed.

## THE ASSAULT

30.     Friday night October 12, 2018, into Saturday, none of the three cellmates were let out
of the cell.   All three inmates were fed through a slot in the door.   All three inmates were still
complaining about the cramped quarters and lockdown conditions.   MR. LOVE and MR. OLIVER

LAW OFFICES
223 RIVER STREET
SUITE D
SANTA CRUZ, CA
95060

9.

COMPLAINT FOR VIOLATION OF CIVIL RIGHTS AND DAMAGES

had not been let out of the cell at all since the lockdown began Friday morning. MR. LOVE and MR. OLIVER began making threats against MR. LUTTRELL, including threatening to set him up in order to have him transferred to "West Unit" so that they could make MR. LUTTRELL their "pet." MR. LOVE and MR. OLIVER began to discuss prison sex. They masturbated in front of MR. LUTTRELL and then threatened to beat MR. LUTTRELL. At this point, MR. LUTTRELL had not yet been seriously touched. Sensing imminent danger, MR. LUTTRELL contacted DEFENDANT DEPUTY MORA through the cell window regarding his transfer to Roundtree and getting out of the cell. DEFENDANT DOE #1, "DEPUTY MOYA" said, "I'll be right back." Rather than returning, DEPUTY MORA transferred two other inmates to Roundtree and never came back. MR. LOVE and MR. OLIVER mocked MR. LUTTRELL with DEPUTY MORA'S abandonment of MR. LUTTRELL. The two made it clear, in no uncertain terms, that no one was coming to save MR. LUTTRELL from them. Mr. OLIVER and Mr. LOVE continued to threaten MR. LUTTRELL that they were going to set him up and he was going to prison. This was about 10 am Saturday morning.

31.     MR. LUTTRELL spent the next 14 hours confined with MR. LOVE and MR. OLIVER. During this time, the threats and assaultive behavior escalated. Mr. OLIVER and MR. LOVE put their penises in MR. LUTTRELL's face. MR. OLIVER and MR. LOVE took turns holding MR. LUTTRELL down as the other simulated sex. MR. LUTTRELL tried to get the attention of guards and other inmates but to no avail. The two threatened to kill MR. LUTTRELL and had exhibited the weapon they would use. MR. LUTTRELL's iPad code was not functional nor was the emergency button in the room. At least five guards walked by and never made any significant observations into cell F-22 nor conducted any inspection despite the fact that on each occasion, either Mr. LOVE or Mr. OLIVER would intentionally cover the door window with their backs.

32.     Then the raping began in earnest. It lasted for 12-13 hours uninterrupted. Both Mr.

LAW OFFICES
223 RIVER STREET
SUITE D
SANTA CRUZ, CA
95060

COMPLAINT FOR VIOLATION OF CIVIL RIGHTS AND DAMAGES

LOVE and Mr. OLIVER took turns sexually assaulting and penetrating MR. LUTTRELL with their fingers as well as objects in the room, such as spoons.  And they psychologically tortured MR. LUTTRELL.   In a sadistic twist, while they took turns sexually assaulting him, MR. LOVE and MR. OLIVER made MR. LUTTRELL watch the jail's Prison Rape Elimination Act (PREA) awareness video on one of their iPads.  They put the video on their iPads right by his face as they assaulted him.  They repeatedly threatened his life and told him they were going to have sex with him.  They continuously tried to pull MR. LUTTRELL's pants down and tried to anally rape him with their penises.  Although MR. LUTTRELL was able to successfully defend himself from this particular act, he was unsuccessful in preventing them from sexually assaulting him with their fingers and foreign objects.  During the assault, they repeatedly told him that they were going to make him their "pet," and that they were going to let others sexually assault him.  They told MR. LUTTRELL that they had killed other people, enjoyed it and that they would kill him if he even attempted to get any guards' attention. MR. LUTTRELL was in an impossible position.  If he fought them they would kill him.  If he did not keep them off of him they would sodomize him with their penises.  MR. LUTTRELL's efforts to stay alive and protect his body as best he could over that lengthy period of time was completely exhausting.

33.     MR. LUTTRELL could not yell for help during the worst of it.  Several guards walked by during the raping but could not see in.  Several inmates saw what was happening but would not dare say anything.  MR. OLIVER and MR. LOVE threatened to kill MR. LUTTRELL with jail made weapons, including a sharp piece of copper stashed under the sink, if he tried to get the guards' attention.

34.     Throughout the assault, MR. OLIVER and Mr. LOVE would recount in horrifyingly graphic detail about their prior violent conquests and assaults.  MR. OLIVER told MR. LUTTRELL about how he punched someone so hard that the person's eye came out.  MR. OLIVER told MR.

LAW OFFICES
223 RIVER STREET
SUITE D
SANTA CRUZ, CA
95060

11.

COMPLAINT FOR VIOLATION OF CIVIL RIGHTS AND DAMAGES

LUTTRELL that he had killed and dismembered a person who crossed him and described it in detail.  They literally tore MR. LUTTRELL open.  Then the men took a staple and ink that MR. OLIVER had brought with him from Roundtree in a magazine and tattooed "WFO" (short for: WIDE FUCKING OPEN) on MR. LUTTRELL's face in reference to what they did to his anus. They threatened to stick the staple in his eye as they held him down.  MR. OLIVER and MR. LOVE stuck MR. LUTTRELL repeatedly with the staple in other parts of his body simply to torture him.

35.    This brutal assault went on until 12 am Sunday, October 14, 2018.    The first opportunity MR. LUTTRELL had to leave the cell since 8pm Friday night was when guards escorted MR. LUTTRELL to the shower with MR. LOVE.  MR. LUTTRELL was unable to disclose the assault or a need for help to the guard because his assailant was standing right next to him and he had every reason to believe he would be further punished for the disclosure by his cell mates.  MR. LUTTRELL took into consideration that mere moments before MR. LOVE had threatened to kill him and that no guard would pay him any attention during his prior pleas. MR. LUTTRELL had every reasonable belief that he was going to be returned to cell F-22 regardless, which is exactly what happened after the shower. The guard did not notice the new tattoo, the facial swelling or any of the other clear nonverbal signs of distress.

36.    Upon arriving back in cell F-22 both men repeatedly demanded to know why MR. LUTTRELL took all of his possessions to the shower.  MR. LOVE and MR. OLIVER accused MR. LUTTRELL of trying to inform on them.  Then they both also falsely accused MR. LUTTRELL of trying to steal from them.  At this point, both men started physically beating MR. LUTTRELL by repeatedly punching him in the face and body with full force.  MR. LUTTRELL began screaming uncontrollably.  Finally, DEFENDANT DOE 1 "OFFICER MOYA" came to the door and found MR. LUTTRELL badly beaten on the floor covering his face.

37.    OFFICER MOYA said to MR. LUTTRELL shortly thereafter, "I told MORA [before

LAW OFFICES
223 RIVER STREET
SUITE D
SANTA CRUZ, CA
95060

12.

COMPLAINT FOR VIOLATION OF CIVIL RIGHTS AND DAMAGES

all this happened] to get you out of that cell.  You shouldn't have been in there with those two.  They were going to West housing (maximum security wing) and you were to go to P-Unit."  After the incident MR. LOVE and MR. OLIVER were taken out of the cell.  Neither one has been charged with any crime through to the present date. The tattooing materials were left in the cell, including the several items used to rape MR. LUTTRELL for the 13 hours, home-made weapons and MR. LUTTRELL's dysfunctional iPad and the disabled security button on the wall.  It is unclear what steps the jail took to preserve any of this evidence despite MR. LUTTRELL's request it be done through counsel.

**MEDICAL TREATMENT AND JAIL RESPONSE**

38.     MR. LUTTRELL was interviewed by jail staff and taken to O Unit (medical unit).  Two unidentified Sherriff's detectives mocked MR. LUTTRELL -basically saying a man would have fought to the death before letting such an event happen- thus suggesting MR. LUTTRELL was not a man.  Jail officials did not use a rape kit on MR. LUTTRELL to collect evidence.  Instead they permitted MR. LUTTRELL to shower.   He received no particular healthcare other than being transported to another unit of the jail.   Officials at the jail did not take MR. LUTTRELL to the hospital until sometime well into the day Sunday, October 14, 2018.  In that time, MR. LUTTRELL was interviewed by a homicide detective who appeared to have absolutely no sympathy for him.  The general lack of concern by jail staff and the investigating agencies only served to exacerbate the psychological wounds that MR. LUTTRELL suffered during and after this experience.

39.     At the hospital in San Jose, a female health care practitioner at Monarch Services was so disturbed and disgusted by MR. LUTTRELL's treatment that she broke protocol and informed MR. LUTTRELL's father what had happened in the manner of a whistle blower.  Monarch Services performed a rape kit and took forensic pictures.  Of course, critical forensic evidence identifying the perpetrators was likely lost due to the jail staff's careless and negligent treatment of MR.

COMPLAINT FOR VIOLATION OF CIVIL RIGHTS AND DAMAGES

LUTTRELL and the ensuing investigation, by for example, permitting MR. LUTTRELL to shower again after staff was informed of the assault.

40.     Upon his return from the hospital, two investigators, "Shearer" and "Ferrati," interviewed MR. LUTTRELL. We anticipate that videotape evidence should exist from F Unit. However, we are unaware of what other documentation exists at the jail regarding this incident. The next day, at the urging of MR. LUTTRELL's father, counsel for MR. LUTTRELL went to court to request MR. LUTTRELL's immediate release from jail custody. Superior Court Judge Timothy Volkmann set a hearing for the next day. Upon learning this information, the jail released MR. LUTTRELL on an ankle monitor prior to the opportunity to conduct any hearing.

41.     At issue are the numerous breaches of protocol and safety that occurred at the jail during the entirety of this incident. This heinous assault was completely preventable and foreseeable.

## FAILURE TO PROPERLY CLASSIFY INMATES

42.     Classification is an obvious concern in the present case. SEAN OLIVER, a known and documented gang leader who is also a repeat seriously violent offender should never have been housed in a locked cell with a jail trustee. These two inmates are on the exact opposite ends of the prison offender spectrum. Several guards seemed to understand this directly as it related to this particular circumstance and yet no one did anything to help MR. LUTTRELL when this foreseeable harm was preventable. Worse yet, on MR. LUTTRELL's information and belief, there may not have been any classification officers at the jail during the relevant time at all. This means that if a problem like this arises, there is no person or protocol able to address the problem though an entire 72 hour period. Furthermore, due to the jail's system of inmate tracking by allocated beds, even though open bunks were available in the day room, MR. LUTTRELL was not permitted to occupy one until he was assigned to it by classification.

LAW OFFICES
223 RIVER STREET
SUITE D
SANTA CRUZ, CA
95060

COMPLAINT FOR VIOLATION OF CIVIL RIGHTS AND DAMAGES

43.     Clearly inmates who have been to prison for seriously violent offenses and who are going to prison imminently for violent offenses, to include known gang leaders, should not be placed in overcrowded locked down jail cells with low-level trustee offenders.

44.     Jail staff intentionally put two known dangerous and violent offenders with a non-dangerous inmate, resulting in an entirely preventable sexual assault.   This is one of the most important functions of a jail:  To not put hardened prison predators with non-violent offenders.   In the present case, and just prior to the incident, jail staff knew that MR. SEAN OLIVER: (1) had a significant history of seriously violent convictions; (2) was a white supremist gang leader of the "Westsiders" and the Caucasian inmate "key holder;" (3) had recently assaulted someone at the Roundtree facility necessitating transferring his housing to the more secure County jail; and (4) had opened his own cell and another mentally ill inmates cell with spoons and assaulted the mentally ill inmate. Jail staff's knowledge of his information lead to the next step wherein jail staff locked Plaintiff MR. LUTTRELL, who had committed no offense, in total segregation in a two bunk cell with MR. SEAN OLIVER and MR. OLIVER's confederate, MR. BRANDON LOVE, for several days without observation.  This deliberate indifference to reasonable inmate classification protocols and inmate safety was a substantial factor in causing MR. LUTTRELL's injuries.

**GANGS**

45.     Gangs are a major problem in California and nowhere worse than in jail, including the Santa Cruz County Jail.  Gangs members are, as a matter of policy, supposed to be housed in separate units (West Housing) to keep them from killing each other and from hurting other inmates. If MR. OLIVER and MR. LOVE, gang members, were not housed in general population, this crime never would have happened.  Failure to properly classify known gang members was a substantial factor in causing MR. LUTTRELL's injuries.

        //

LAW OFFICES
223 RIVER STREET
SUITE D
SANTA CRUZ, CA
95060

COMPLAINT FOR VIOLATION OF CIVIL RIGHTS AND DAMAGES

//

**OVERCROWDING**

46.     It is a well-documented fact that for the last 30 years, the Santa Cruz County jail has consistently maintained a higher inmate population than can legally be supported by the facility.  It has been the subject of multiple Santa Cruz County Grand Jury findings.  For example, while MR. LUTTRELL was housed in F Unit (general population) the unit was unconscionably overcrowded, despite several bunks not being occupied at that moment.  Inmates were triple bunked (three bunk beds high) in the day room (common area in the center of the unit).  Inmates, such as MR. LUTTRELL were triple roomed in two person cells that contained only two beds without concern for the violent nature of the inmate housed therein.  Numerous "boats" (approximately 17 plastic sleeping containers), were also located in the day room of the F Unit such that it was difficult to walk anywhere at the time of the incident.  Most of the time all the cells were completely full. Moreover, there is an insufficient number of, and insufficiently trained, staff to monitor all of the inmates.  The root of MR. LUTTRELL's unfortunate experience begins with the constant problem of over-incarcerating and under-staffing.  Effective remedial measures need to be implemented in order to address this multi-decade problem.  This deliberate indifference to clear severe overcrowding problems was a substantial factor in causing MR. LUTTRELL's injuries.

**FAILURE TO MAINTAIN SAFETY EQUIPMENT**

47.     As previously mentioned, aside from the emergency button by the main day room door, most of the emergency buttons in the F-Unit do not work.  For those that do work, guards do not regularly respond to emergency calls from individual cells.  In this case, MR. LUTTRELL's cellmates intentionally destroyed the emergency button several days before the assault, which remained damaged for several days prior to and through the attack.  This button and MR. LUTTRELL's non-functioning iPad were his lifelines in the completely locked down cell.  MR.

LAW OFFICES
223 RIVER STREET
SUITE D
SANTA CRUZ, CA
95060

COMPLAINT FOR VIOLATION OF CIVIL RIGHTS AND DAMAGES

LUTTRELL had no access to help for days while enduring the complete lock down for behavior in which he took no part.  MR. LUTTRELL's food was served through a slot in the metal cell door. MR. LUTTRELL was completely separated from the entire jail, other inmates aside from his cellmates and from staff.  This deliberate indifference towards the maintenance and inspection of emergency safety equipment was a substantial factor in causing MR. LUTTRELL's injuries.

**FAILURE TO OBSERVE AND INSPECT**

48.     This critical jail staff responsibility is treated as a casual routine duty and often ignored.  Guards did not even look into the F-22 cell through the small window at any relevant times.  As a general practice, if the window in the steel door was obstructed, guards did not require the door be opened.  The guards walked by and merely tapped their cards on the door sensor indicating their presence and kept walking.  On information and belief, as a practice when the guards did look in the cells, they disregarded the fact that the view was obstructed -either by a picture that blocks the window or the back of someone's body.   MR. LUTTRELL's assailants easily manipulated this system to torture and rape MR. LUTTRELL in their shared cell for 13 hours --right in front of a video camera.  This lack of sufficient inspection of cells and observation is a perennial issue in the Santa Cruz County jail.  Santa Cruz County jail staff has a documented history in previous grand jury reports of failing to keep and falsifying observation "pipe logs," including falsely detailing inspection times.  Video evidence later revealed no inspections actually occurred. This deliberate indifference to following safety and inspection protocols was a substantial factor in causing MR. LUTTRELL's injuries.

**GROUP PUNISHMENT**

49.     It is still completely unclear why MR. LUTTRELL was "locked down" as part of MR. OLIVER's punishment when the video evidence clearly depicted only MR. OLIVER popping his cell and assaulting another prisoner.  MR. LUTTRELL was not accused of having anything to do

LAW OFFICES
223 RIVER STREET
SUITE D
SANTA CRUZ, CA
95060

17.

COMPLAINT FOR VIOLATION OF CIVIL RIGHTS AND DAMAGES

with that assault.  Locking him, a trustee, up in such a powder keg environment with an explosive predator and with no due process was a clear demonstration of deliberate indifference to MR. LUTTRELL's safety.  Of all that occurred, from an institutional perspective, the group punishment levied by jail staff on MR. LUTTRELL for just being unlucky enough to have MR. OLIVER and MR. LOVE in his cell is a clear violation of every modern conception of due process and an infliction of cruel and unusual punishment.  This deliberate indifference to the fact that no behavior by MR. LUTTRELL, either personally or acting in concert, was in any way related to SEAN OLIVER's assault on a fellow disabled prisoner, such as to actually warrant punishment, was a substantial factor in causing MR. LUTTRELL's injuries.

## ACCEPTED JAIL VIOLENCE AND ILLEGAL BEHAVIOR

50.     As one might expect, violence exists in jail.  However, violence seems to be accepted with an unreasonably high degree in the Santa Cruz County Jail.  The same applies to the existence of drugs in the jail.  Jail staff routinely allow, permit, tolerate, fail to control, etc., inmates to orchestrate the flow of both drugs and violence in the jail to the degree that one is left to wonder who is controlling inmate behavior at the jail.   Drugs come into the jail every day, from methamphetamine to marijuana to heroin and cocaine.  Inmates control the distribution of both violence and drugs in elaborate systems.  More information is contained below about this topic in the "key holder/shot caller" section.

## INMATE REQUESTS AND COMPLAINTS

51.     On information and belief and MR. LUTTRELL's personal experience, jail staff routinely ignore, and have a pattern of ignoring, many inmate requests and complaints.  Particularly, if you are a disfavored or considered an annoying inmate then often your complaints are intentionally not addressed.  Oral complaints are not recorded by staff and written complaints are often lost or destroyed.  MR. LUTTRELL, who was a trustee, complained repeatedly over the course

LAW OFFICES
223 RIVER STREET
SUITE D
SANTA CRUZ, CA
95060

COMPLAINT FOR VIOLATION OF CIVIL RIGHTS AND DAMAGES

of his first month or relevant incarceration that his iPad code did not function.  He complained orally and in writing.  He received no response to either method of complaint.  MR. LUTTRELL also complained repeatedly that he was misclassified and then that it was too dangerous for him to be housed in a two person cell with two other people that were hardened gang predators.  Not one guard showed the least bit of interest.  This deliberate indifference to safety deficiencies through MR. LUTTRELL's complaints was a substantial factor in causing MR. LUTTRELL's injuries.

### KEY HOLDER/ SHOT CALLER SYSTEM

52.    These terms refer to an inmate whose role is to control all the inmates of a particular race in the unit of the jail.  For example, in F-Unit, with jail staff knowledge and acquiescence, SEAN OLIVER controlled all the Caucasian inmates' behavior, including fighting and all the drugs that came in through Caucasian inmates.  Latino inmates and African American inmates had their own "shot caller/key holders" in the F-unit who controlled their own race in the same manner.  When drugs came into a unit, which again at all relevant times happened on a daily basis, the "shot caller/key holder" distributed the drugs based on a well-defined system of percentages.  Everyone of that race would share a percentage, the person who brought the drugs in would get a percentage and the remainder was distributed to the other races of inmates in the unit to neutralize violence that might otherwise result.  Commissary distribution often worked the same way, where the key holder will take other inmates' commissary and distribute it to the unit's inmates against that owning inmate's will.  If the owner inmate complains, he or she suffers assault or worse for not acquiescing.

53.    The key holder/shot caller also controls and organizes inmate fighting including ordering inmates to fight who were not otherwise involved in conflict.  This is called requiring them to "put in work."  Key holders communicate with key holders of other races and control fighting with other races of inmates.  Key holders are often the most feared and violent inmates.  On information and belief, jail staff is aware of this organized violence as well.  The jail is aware of who

LAW OFFICES
223 RIVER STREET
SUITE D
SANTA CRUZ, CA
95060

COMPLAINT FOR VIOLATION OF CIVIL RIGHTS AND DAMAGES

the shot caller/key holders are and of this system.  Disobedience to a key holder can result in severe beatings or even death.  Inmates, particularly those connected to greater gangs such a MR. OLIVER, can cause violence to happen outside of their unit or even outside their facility by sending notes called "kites."  A message to kill someone is called a "kill kite."  On information and belief, MR. OLIVER has sent kill kites before resulting in the death of individuals.  MR. OLIVER threatened to kill MR. LUTTRELL in this manner.  MR. LUTTRELL is presently in reasonable fear for his life.

54.     On information and belief, at all relevant times, the shot caller/key holder system is the standard, a norm known to jail staff and accepted as routine jail culture.  The system poses a danger to every single person that enters the jail because they are swept into this extortion system upon arrival in the facility.  Inmates have no way to defend themselves against this cultural institution and wind up having to "put in work" for the system, defiance to the same bringing physical beatings or worse.  Certainly, the jail does not seem to care as jail staff have taken no known concerted measures to dismantle the shot caller/key holder system.  This deliberate indifference to the organized and institutional shot caller/ key holder system, known to jail staff, permitted to control inmate culture and behavior was a substantial factor in causing MR. LUTTRELL's injuries.

### THE PRISON RAPE ELIMINATION ACT (PREA)

55.     The PREA was passed into federal law in 2003 and was enacted in California by Assembly Bill 550, which was called the Sexual Abuse in Detention Elimination Act (SADEA).  The standards set forth in the PREA and SADEA apply to all prison, jails and juvenile detention facilities in California.  These laws set forth legal standards with the intent of eliminating rape and sexual assaults inside correctional facilities.  The foregoing laws were applicable to the Santa Cruz County Jail at all times relevant to the present lawsuit.

56.     PREA requires in part that jails institute: formal training programs, institutional and

COMPLAINT FOR VIOLATION OF CIVIL RIGHTS AND DAMAGES

inmate reporting, screening for risk of victimization and abusive characteristics, inmate education, protective custody, responsive planning protocol for investigations and examinations of rape victims, disciplinary actions, medical care, data collection and other obligations.

57.    The Santa Cruz County jail, by and through its relevant staff, was at all relevant times not compliant with numerous sections of PREA.  For example, MR. LUTTRELL never received any education on PREA and was not screened consistent with PREA.  On information and belief, neither were MR. OLIVER or MR. LOVE screened as potential sexual abusers.  Contrary to PREA, jail staff, upon learning of the assault, expressly made MR. LUTTRELL feel as though he was not a "man" for having "permitted" the assault to occur.  Upon learning of the assault, MR. LUTTRELL was permitted to shower and significant evidence was not preserved, either on MR. LUTRELL's body or in cell F-22.  MR. LUTTRELL's transport to the hospital was significantly delayed. Further, on information and belief, neither MR. LOVE nor MR. OLIVER faced any penalty or punishment despite repeatedly raping and torturing MR. LUTTRELL over the course of greater than 12 hours.

58.    The failure of the Santa Cruz County jail and its staff to take the mandatory actions set forth in the PREA despite their subjective knowledge of the risks of sexual assault in prison for which the PREA was instituted constitute deliberate indifference to the health, well-being and due process rights of MR. LUTTRELL resulting in his injuries.

**FACTS RELATED TO DAMAGES**

59.    As a further direct and proximate result of the negligence and deliberate indifference of defendants, and each of them, Plaintiff was physically, mentally, emotionally and financially injured and damaged as a proximate result of Defendants' wrongful conduct.

60.    Each individual Defendant acted recklessly or with callous indifference to Plaintiff's complaints, life threatening assault, dangerous jail conditions and to Plaintiff's constitutional rights.

LAW OFFICES
223 RIVER STREET
SUITE D
SANTA CRUZ, CA
95060

Plaintiff is therefore entitled to an award of punitive damages against said individual Defendants.

61.    Plaintiff found it necessary to engage the services of private counsel to vindicate his rights, under the law.  PLAINTIFF is therefore entitled to recover all attorneys' fees incurred in relation to this action pursuant to Title 42 United States Code section 1988.

**FIRST CAUSE OF ACTION**
(CRUEL AND UNUSUAL PUNISHMENT-42 U.S.C. Section 1983)
(Against all Defendants)

62.    Plaintiff hereby re-alleges and incorporates by reference herein paragraphs 1 through 61 of this Complaint.

63.    As set forth above, PLAINTIFF was subjected to deprivation of rights by all DEFENDANTS, inclusive, acting under color of law of the United States and State of California and of the County of Santa Cruz which rights include, but are not limited to, privileges and immunities secured to Plaintiff by the Constitution and laws of the United States.   By reason of the aforementioned acts, these Defendants, have violated the constitutional rights and liberty interests of Plaintiff TYLER LUTTRELL, including those provided in the Eighth and Fourteenth Amendments to the U.S. Constitution.

64.    All DEFENDANTS subjectively knew, or should have known, of MR. LUTTRELL's serious risks of physical harm, were deliberately indifferent to them, ignored them, failed to house and generally act towards MR. LUTTRELL in a manner that would not result in his harm.

65.    DEFENDANTS knew that MR. LUTTRELL was complaining that he should not be housed with inmates BRANDON LOVE and SEAN OLIVER who the jail knew to be seriously violent gang leaders because of his own safety concerns.   DEFENDANTS ignored MR. LUTTRELL's pleas for assistance and action.

66.    DEFENDANTS subjectively knew and/or had reason to know, that MR. LUTTRELL was unsafe in a two inmate cell with two violent gang members who had just assaulted another

22.

COMPLAINT FOR VIOLATION OF CIVIL RIGHTS AND DAMAGES

inmate.

67.     DEFENDANTS subjectively knew or should have known that the safety features in the relevant cell had been vandalized and dismantled for several days prior to the attack preventing MR. LUTTRELL from making any emergency calls for his own protection.

68.     DEFENDANTS subjectively knew or should have known that at all times the 2003 Prison Rape Elimination Act ("PREA") 28 C.F.R. Part 115 and 42 U.S.C. § 15609(7) and SADEA was in effect and applicable to the Santa Cruz County Jail.  At all times jail staff failed to meet basic standards of care within the PREA for training, screening, response and investigation, etc.

69.     As a further direct and proximate result of the deliberate indifference of DEFENDANTS, and each of them, PLAINTIFF was physically, mentally, emotionally and financially injured and damaged as a proximate result of DEFENDANTS' wrongful conduct.

70.     Each individual DEFENDANT acted deliberate indifference, recklessness, and in a callous manner to PLAINTIFF's complaints, life threatening assault, dangerous jail conditions known to DEFENDANTS and to PLAINTIFF's constitutional rights. PLAINTIFF is, therefore, entitled to an award of punitive damages against said individual DEFENDANTS.

71.     PLAINTIFF found it necessary to engage the services of private counsel to vindicate his rights, under the law.  PLAINTIFF is therefore entitled to recover all attorneys' fees incurred in relation to this action pursuant to Title 42 United States Code section 1988.

WHEREFORE, PLAINTIFF prays for relief as hereinafter set forth.

## SECOND CAUSE OF ACTION
(*Monell* - 42 U.S.C. section 1983)

72.     PLAINTIFF hereby re-alleges and incorporates by reference herein paragraphs 1 through 61 of this Complaint.

73.     The aforementioned acts and/or omissions of the Defendants COUNTY, SHERIFF

COMPLAINT FOR VIOLATION OF CIVIL RIGHTS AND DAMAGES

LAW OFFICES
223 RIVER STREET
SUITE D
SANTA CRUZ, CA
95060

HART and DOES 1-25 in being deliberatively indifferent to Plaintiff LUTTRELL's safety and violating his civil rights were the direct and proximate result of customs, practices and policies of Defendant COUNTY, SHERIFF HART and DOES 1 through 25, as alleged herein.

74.    At all times herein mentioned, Defendants COUNTY, SHERIFF HART and DOES 1-25 maintained a policy or de facto unconstitutionally informal custom or practice of permitting, ignoring and condoning, jail personnel to delay in providing adequate inmate classification; failing to respond to inmate complaints of unsafe conditions and classifications; failing to regularly and properly observe inmates and cell conditions; failure to control jail staff including inadequate intake and screening, failure to supervise, lax supervision, failure to report, investigate, and reprimand Jail personnel's wrongful conduct, in addition to other known deficiencies alleged in this action.

75.    PLAINTIFF alleges that Defendant COUNTY maintained a policy, custom or practice of failing to provide adequately trained staff in the jail causing a failure to properly classify, house, educate and monitor the inmates.

76.    PLAINTIFF alleges that Defendant COUNTY maintained a policy, custom or practice of failing to provide the jail with adequate security staff and beds for inmate housing.

77.    Each policy, custom or practice posed a substantial risk of serious harm to plaintiff TYLER LUTTRELL and defendants COUNTY, SHERIFF HART knew, or should have known, its policy posed this risk.

78.    At all times the PREA was in effect and applicable to the Santa Cruz County Jail.  At all times jail staff failed to meet basic standards of care within the PREA for training, screening, response and investigation.

79.    PLAINTIFF is further informed and believes and thereon alleges that as a result of the deliberate indifference, reckless and/or conscious disregard of the misconduct by DOES 1-25, and/or each of them, Defendants COUNTY, SHERIFF HART and DOES 1-25, and/or each of them,

LAW OFFICES
223 RIVER STREET
SUITE D
SANTA CRUZ, CA
95060

COMPLAINT FOR VIOLATION OF CIVIL RIGHTS AND DAMAGES

encouraged the Jail personnel to continue their course of deliberate indifference and caused this lack of training in Jail personnel, resulting in the violation of the PLAINTIFF's rights as alleged herein.

80.   The aforementioned acts and/or omissions and/or deliberate indifference by high ranking SANTA CRUZ COUNTY officials, including high ranking SANTA CRUZ Sheriff's Department Supervisors, Defendants COUNTY, SHERIFF HART and DOES 1-25, and each of them resulted in the deprivation of PLAINTIFF's constitutional rights.  These customs, practices or policies were the legal cause of PLAINTIFFS' injuries, and each individual DEFENDANT acting in accord with this custom, policy or practice acted with deliberate indifference to the needs of persons such as TYLER LUTTRELL, who was in the custody and care of DEFENDANTS.

81.   Said rights are substantive guarantees under the Eighth and/or Fourteenth Amendments to the United States Constitution.

WHEREFORE, PLAINTIFF prays for relief as hereinafter set forth.

### THIRD CAUSE OF ACTION
(Violation of Civil Code Section 52.1)
(Against all Defendants)

82.   PLAINTIFF re-alleges and incorporates by reference herein paragraphs 1 through 61 of this Complaint.

83.   PLAINTIFF is informed and believes and thereon alleges that while TYLER LUTTRELL was under the sole exclusive care of all DEFENDANTS as described herein, and in DEFENDANTS' custody, he was unable to adequately defend himself from attack by SEAN OLIVER and BRANDON LOVE while locked in a confined and institutionally abandoned cell with the two.  DEFENDANTS, acting within the scope and course of their employment and/or their contractual agreements with Defendant COUNTY, had a duty to provide TYLER LUTTRELL with reasonably safe housing quarters. The conduct of all DEFENDANTS, as described herein, acting in the course and scope of their employment and/or contractual agreements for Defendant COUNTY,

LAW OFFICES
223 RIVER STREET
SUITE D
SANTA CRUZ, CA
95060

COMPLAINT FOR VIOLATION OF CIVIL RIGHTS AND DAMAGES

violated California Civil Code Section 52.1, they interfered with plaintiffs' exercise and enjoyment of his civil rights, to be free from cruel and unusual punishment, and as a result Plaintiff has suffered damages as set forth herein.

84.   As a direct and proximate result of defendants' violation of Civil Code Section 52.1, PLAINTIFF suffered violation of his constitutional rights, and suffered damages as set forth herein.

85.   Since this conduct occurred in the course and scope of employment, Defendant COUNTY and SHERIFF HART are therefore liable for their employees' unlawful behavior pursuant to the agency principle of *respondeat superior*.

86.   PLAINTIFF is entitled to injunctive relief, statutory penalties and an award of his reasonable attorney's fees pursuant to Civil Code Section 52.1(h).

WHEREFORE, PLAINTIFF pray for relief, as hereinafter set forth.

**FOURTH CAUSE OF ACTION**
(Negligent Hiring, Retention, Training, Supervision, and Discipline)
(Against Defendant COUNTY, HART, and DOES 2-25)

87.   PLAINTIFF re-alleges and incorporates by reference herein paragraphs 1 through 61 of this Complaint.

88.   At all times mentioned herein, Defendant COUNTY, by and through its agents and employees, DEFENDANTS COUNTY, HART and DOES 2-25, have and had a mandatory duty of care to properly and adequately hire, train, retain, supervise, and discipline its sheriff officer employees so as to avoid unreasonable risk of harm to citizens.  With deliberate indifference, all DEFENDANTS failed to take necessary, proper, or adequate measures in order to prevent the violation of PLAINTIFF'S rights, and injury and damages to PLAINTIFF. All DEFENDANTS failed to supervise subordinates regarding the deliberate indifference to the necessity to protect inmates. Moreover, all DEENDANTS knew or should have known of this custom, policy, pattern or practice of unconstitutional acts, and these Defendants had a duty to investigate their subordinates,

LAW OFFICES
223 RIVER STREET
SUITE D
SANTA CRUZ, CA
95060

COMPLAINT FOR VIOLATION OF CIVIL RIGHTS AND DAMAGES

and to instruct their subordinates to prevent similar acts to other persons, but failed to take steps to properly train, supervise, investigate or instruct Jail Personnel, and/or failed to have adequate policies and procedures to this end.  This lack of adequate supervisorial training, and/or policies and procedures demonstrates the existence of an informal custom or policy of promoting, tolerating, and/or ratifying the continuing deliberately indifferent to MR. LUTTRELL's serious safety needs and complaints to Jail Personnel.

89.    The practices deployed by all DEFENDANTS fell well below those required by the PREA and SADEA.  Santa Cruz County Jail was at all times a correctional facility to which PREA applied as DEFEDANTS were subjectively aware.

90.    As a proximate result of all DEFENDANTS negligent conduct, PLAINTIFF suffered damages including severe emotional and mental distress and injury having a traumatic effect on plaintiffs' emotional tranquility.

WHEREFORE, PLAINTIFF prays for relief as hereinafter set forth.

**FIFTH CAUSE OF ACTION**
(General Negligence)
(Against all Defendants)

91.    PLAINTIFF re-alleges and incorporates by reference herein paragraphs 1 through 61 of this Complaint.

92.    PLAINTIFF alleges that all defendant's owed a duty to plaintiff under section 1714 of the California Code of Civil Procedure to act as reasonable jail guards in the same or similar circumstances.

93.    Defendant's breached that duty by failing to protect TYLER LUTTRELL from foreseeable harm at the hands of fellow inmates SEAN OLIVER and BRANDON LOVE.

94.    At all times the PREA was in effect and applicable to the Santa Cruz County Jail.  At all times jail staff failed to meet basic standards of care within the PREA for training, screening,

LAW OFFICES
223 RIVER STREET
SUITE D
SANTA CRUZ, CA
95060

COMPLAINT FOR VIOLATION OF CIVIL RIGHTS AND DAMAGES

response and investigation.

95.     TYLER LUTTRELL's harm was the direct and proximate result of defendants' negligence.

96.     TYLER LUTTRELL suffered harm as the result of defendants' negligence.

97.     TYLER LUTTRELL further claims that the breaches of the appropriate standards of care amounted to recklessness, intentional, malicious, extreme, outrageous, wanton, and oppressive conduct by DEFENDANTS, and any and all allegations requesting punitive damages.

WHEREFORE, PLAINTIFF prays for relief as hereinafter set forth.

### SIXTH CAUSE OF ACTION
(INTENTIONALLY INFLICTION OF EMOTIONAL DISTRESS)
(Against all Defendants)

98.     PLAINTIFF re-alleges and incorporates by reference herein paragraphs 1 through 61 of this Complaint..

99.     As set forth above, Plaintiff alleges: (1) outrageous conduct by the Defendants; (2) who intended to cause or recklessly disregarded the probability of causing emotional distress; (3) and the Defendants' actions were the actual and proximate cause (4) of Plaintiff's severe emotional suffering.

100.    DOE DEFENDANTS 1-25, whose names are not presently known to plaintiff acted in concert and publicly ridiculed TYLER LUTTRELL for failing to prevent himself from being severely sexually assaulted after he revealed the nature of the severe attack.

101.    Defendants SANTA CRUZ COUNTY and SHERIFF HART, public entities, are also liable for injury proximately caused by acts or omissions of their employees under Govt. Code § 815.2.

102.    DOE DEFENDANTS 1-25's behavior in blaming and publicly ridiculing plaintiff LUTTRELL for being seriously sexually assaulted was outrageous and inexcusable.

LAW OFFICES
223 RIVER STREET
SUITE D
SANTA CRUZ, CA
95060

COMPLAINT FOR VIOLATION OF CIVIL RIGHTS AND DAMAGES

103.    DOE DEFENDANTS'1-25 reckless behavior was carried out with disregard of the probability of causing emotional distress.

104.    DOE DEFENDANTS'1-25 reckless behavior was a direct and proximate cause of Plaintiff's injuries.

105.    PLAINTIFF suffered severe emotional distress as a result of DOE DEFENDANTS'1 25 conduct.

106.    PLAINTIFF alleges the actions of Defendants were attributable to bad faith, malicious hostility towards Plaintiff, and a willful and or deliberate disregard for PLAINTIFF's rights. As a direct and proximate result of the afore-described intentional conduct by these Doe Defendants, PLAINTIFF suffered economic loss, grievous bodily harm and emotional distress.

107.    Each and every herein-named DOE DEFENDANTS' afore-described acts were intentional, wanton, malicious and oppressive and made with reckless indifference to PLAINTIFF's rights thus entitling Plaintiff to an award of punitive damages.

WHEREFORE, PLAINTIFF prays for relief as hereinafter set forth.

**SEVENTH CAUSE OF ACTION**
**(Negligent Infliction of Emotional Distress)**
(Against All Defendants)

108.    PLAINTIFF re-alleges and incorporates by reference paragraphs 1 through 61 of this Complaint, inclusive, as though set forth in full.

109.    ALL DEFENDANTS owe a duty to act reasonably and exercise due care in regards to PLAINTIFF'S safety and housing classification.

110.    ALL DEFENDANTS breached their duty to act reasonably and exercise due care in regards to PLAINTIFF'S safety and housing assignments.

111.    ALL DEFENDANTS knew, or should have known, at all times pertinent to this complaint, with the exercise of reasonable care and due diligence, that their actions or omissions would cause injury to the Plaintiff.

112.    Despite this knowledge, Defendants failed to take due care to avoid inflicting emotional distress on PLAINTIFF.

LAW OFFICES
223 RIVER STREET
SUITE D
SANTA CRUZ, CA
95060

COMPLAINT FOR VIOLATION OF CIVIL RIGHTS AND DAMAGES

113.    As a direct and proximate result of Defendants' breach of his or her duty not to inflict emotional distress on PLAINTIFF, PLAINTIFF suffered and continue to suffer extreme emotional injury, including specific damages as set forth herein.

114.    As a direct and proximate result of ALL DEFENDANTS' conduct, PLAINTIFF has been damaged as set forth herein, and has suffered and continue to suffer injury, including extreme anxiety, embarrassment, humiliation, depression, discomfort, anguish, stress and severe mental and emotional distress.

115.    ALL DEFENDANTS actions are or were reckless willful, malicious, oppressive and despicable, in callous and reckless disregard of the rights of Plaintiff, and each of them, therefore entitling PLAINTIFF to recover punitive damages.

WHEREFORE, PLAINTIFF prays for relief as hereinafter set forth.

## JURY DEMAND

PLAINTIFF hereby demands a jury trial in this action.

## PRAYER

WHEREFORE, Plaintiff prays for relief, as follows:

1.    For general damages in a sum of $10,000,000.00;

2.    For special damages in a sum according to proof;

3.    For punitive damages in a sum according to proof;

4.    For reasonable attorney's fees pursuant to 42 U.S.C. Section 1988;

5.    For injunctive relief as the court deems appropriate including that the policies of Defendant SANTA CRUZ COUNTY for the classification of violent and nonviolent inmates maintained at the SANTA CRUZ COUNTY JAIL fall below constitutional standards; that the jail institute and practice all mandates of PREA and SADEA; and that the policy or policies relevant to authorizing, allowing, or ratifying the practice by its Jail Personnel of being deliberately indifferent to safety needs of the inmates, pursuant to California Civil Code Section 52.1;

   a.    For violation of California Civil Code Sections 52 and 52.1, statutory damages, and reasonable attorney's fees;

COMPLAINT FOR VIOLATION OF CIVIL RIGHTS AND DAMAGES

1

        b.      For violation of California Civil Code Section 51.7 pursuant to California

2

                  Civil Code Section 52(b), punitive damages against Defendant peace officers,

3

                  $25,000.00 for each offense and reasonable attorney's fees;

4

        c.      For cost of suit herein incurred; and

5

        d.      For such other and further relief as the Court deems just and proper.

6

7    Dated: November 5, 2019

8                                     *Elizabeth Caballero*

                                   Elizabeth M. Caballero

9                                   Jonathan Che Gettleman

                                   CABALLERO & GETTLEMAN, INC.

                                   Attorney for Plaintiff, TYLER LUTTRELL

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LAW OFFICES
223 RIVER STREET
SUITE D
SANTA CRUZ, CA
95060

31.

COMPLAINT FOR VIOLATION OF CIVIL RIGHTS AND DAMAGES