UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| TYLER LUTTRELL,<br><br>    Plaintiff,<br>v.<br>JAMES HART, et al.,<br><br>    Defendants. | Case No. 5:19-cv-07300-EJD<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S CROSS-MOTION FOR PARTIAL SUMMARY ADJUDICATION**<br><br>Re: Dkt. Nos. 91, 99 |

Plaintiff Tyler Luttrell was physically and sexually assaulted by two inmates while incarcerated at the Santa Cruz County Jail. Plaintiff asserts claims for violations of 42 U.S.C. section 1983 and California law. Defendants County of Santa Cruz, Sheriff James Hart, and Correctional Officers Victor Mora and Eduardo Moya (collectively referred to as "Defendants") move for summary judgment (Dkt. No. 99), and Plaintiff cross-moves for partial summary judgment. Dkt. No. 91. The motions are fully briefed. The Court finds the motions suitable for disposition without oral argument pursuant to Civil Local Rule 7-1(b). For the reasons stated below, Defendants' motion for summary judgment is granted in part and denied in part, and Plaintiff's cross-motion for partial summary judgment is denied.

**I. BACKGROUND**

Officers Mora and Moya are employed as Correctional Officers for the County of Santa Cruz. During the time at issue, Officer Mora was a classification officer at the Santa Cruz County Jail, and acted as a housing officer when needed. Officer Moya was a housing officer at Santa Cruz County Jail.

Case No.: 5:19-cv-07300-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT

1

On September 29, 2018, Plaintiff was arrested for probation violations and possession of weapons and drugs. On October 2, 2018, the Santa Cruz County Sheriff's Office classified Plaintiff as a "minimum" security inmate and initially housed him in the Jail's C Unit. On October 5, 2018, Plaintiff reported to Jail staff that he felt unsafe in C Unit and asked to be moved to a different unit. Jail staff granted his request and moved him from C Unit into the open bunk area in the F Unit. When the opportunity arose, Plaintiff elected to move from the open bunk area to a cell because the cell provided more privacy. On October 10, 2018, the Jail moved him into a two-bunk cell, F22, which was already occupied by one of the assailants, Brandon Love ("Love"). The intercom in F22 was inoperable. In March of 2018, Love was classified as a "maximum" security inmate; however, on October 7, 2018, Love was reclassified to a "minimum" security inmate.[1] Plaintiff and Love were not acquainted prior to sharing F22.

On or about October 10, 2018, the second assailant, Sean Oliver ("Oliver"), was transferred from Santa Cruz's Rountree facility to the County Jail and placed in F22. A classification assessment dated August 3, 2018 indicated Oliver was a "minimum" security inmate. Just before the transfer, Oliver was involved in a fight at Rountree and identified as "restricted to cell" ("RTC") status.[2]

During the early morning hours of October 12, 2018, Oliver and Love "popped" open their locked cell door. They then "popped" open the locked cell door of Ivan Etell and assaulted him.[3] After reviewing a video of the incident, corrections officers locked Love, Oliver and Plaintiff back in their cell and told them they were RTC'd pending a review. Later that morning, Plaintiff left

---

[1] Plaintiff contends that the "minimum" security classification was incorrect. Plaintiff reasons that the assessment form indicates Love was assessed with seven points, which should have resulted in a "medium" security classification. Pl.'s Opp'n at 13, Dkt. No. 103. Plaintiff separately contends that the Jail's computer classification inaccurately classified inmates. *Id*.

[2] It is unclear whether the classification of "minimum" security should have been increased because of his involvement in the fight at Rountree.

[3] Plaintiff contends that he had no choice but to participate in the assault.

Case No.: 5:19-cv-07300-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT

2

the cell for a scheduled dental appointment. Jail staff inadvertently returned him to open housing in the F Unit. At approximately 11:00 p.m., Plaintiff physically assaulted another inmate.[4] Officer Moya came on-duty and returned Plaintiff to F22.

The next day, on October 13, 2018, from 2:00 p.m. to 11:00 p.m., Love and Oliver physically and sexually abused Plaintiff. According to the Supplemental Incident Report prepared by Christopher Shearer, Love and Oliver pulled Plaintiff's pants down, pinned him on the floor with his knees pulled to his chest, and tried to penetrate his exposed anus with their ointment-covered fingers. Love rubbed his facial hair along Plaintiff's face and kissed him. They tried to have Plaintiff give them oral sex by putting their penises in his face. Hours later, they inserted a plastic spoon in Plaintiff's rectum several times. They played the prison rape elimination video on their jail issued electronic tablet over and over to taunt Plaintiff. Love and Oliver also tattooed Plaintiff's face against his will. Later in the evening, a corrections officer delivered dinner to F22 through a food slot. Love and Oliver warned Plaintiff that if he reported anything to staff, they would beat him with a piece of copper hidden in the cell.

A couple of hours after dinner, Plaintiff told Officer Moya he wanted to get out of the cell and take a shower. Officer Moya told him he could take a shower after "lights out." After "lights out," Officer Moya returned to F22, and removed each of the three inmates from the cell so that they could take showers. On the walk back to his cell, Plaintiff asked Officer Moya about transferring to the lower security Rountree facility. Officer Moya told him he would likely be transferred in the morning. Plaintiff did not report the assault to Moya at this time.

When Plaintiff returned to F22, Oliver and Love accused him of stealing food and began physically assaulting him. The assault continued until he saw Officer Moya approach the cell window; the two made eye contact and Plaintiff mouthed the words, "get me out of here." Dkt. No. 91-2 at 88. Officer Moya separated Plaintiff from Love and Oliver. Plaintiff told Officer

---

[4] Plaintiff again contends that he had no choice but to initiate the assault.

Case No.: 5:19-cv-07300-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT

3

Moya about the assaults. Plaintiff requested and was given a Sexual Assault Response Team exam at Valley Medical. The examining nurse documented injuries to Plaintiff's anal area, bruising on his head, neck, back and left buttock, tattoo needle sticks on his shoulder and left arm, and a tattoo of "WFO" on his face.

Plaintiff asserts seven causes of action: (1) cruel and unusual punishment in violation of the Eighth and Fourteenth Amendment under 42 U.S.C. Section 1983 against Officers Moya and Mora; (2) *Monell* liability under Section 1983; (3) violation of California Civil Code Section 52.1 (the "Bane Act") against Officers Moya and Mora; (4) negligence against Officers Moya and Mora; and (5) intentional infliction of emotional distress against Officers Moya and Mora. Second Am. Compl. ("SAC"), Dkt. No. 46.

## II. STANDARDS

A court must grant summary judgment if the movant shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In order to satisfy this burden, "the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). "In order to carry its ultimate burden of persuasion on the motion, the moving party must persuade the court that there is no genuine issue of material fact." *Id.* A genuine factual issue exists if, considering the burdens of production and proof that would be required at trial, sufficient evidence favors the non-movant such that a reasonable jury could return a verdict in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

Once the moving party has met its burden, the nonmoving party may not simply rely on the pleadings, but must produce significant probative evidence, by affidavit or as otherwise provided by Federal Rule of Civil Procedure 56, supporting the claim that a genuine issue of material fact exists. *TW Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). In

other words, there must exist more than "a scintilla of evidence" to support the non-moving party's claims, and conclusory assertions will not suffice. *See Anderson*, 477 U.S. at 252; *Thornhill Publ'g Co. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979). When reviewing the evidentiary record, the court must draw all reasonable inferences in favor of the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, [i]t is not the task of the Court to scour the record in search of a genuine issue of triable fact." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996).

Where, as here, the parties have filed cross-motions for summary judgment, "[e]ach motion must be considered on its own merits." *Fair Hous. Council of Riverside Cty., Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001). "In fulfilling its duty to review each cross-motion separately, the court must review the evidence submitted in support of each cross-motion." *Id.*

## III.   DISCUSSION

### A.   First Cause of Action:  Section 1983

In the first cause of action, Plaintiff alleges that Officers Moya and Mora subjected him to cruel and unusual punishment in violation of the Eighth and Fourteenth Amendment. SAC ¶ 71. Plaintiff alleges that Officers Moya and Mora knew, or should have known, of Plaintiff's serious risks of physical harm and were deliberately indifferent to those risks. *Id.* ¶ 72.

To state a claim under Section 1983, a plaintiff must allege that a defendant, while acting under color of state law, caused a deprivation of the plaintiff's federal rights. *West v. Atkins*, 487 U.S. 42, 48 (1988) (citations omitted); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (citation omitted). A government official, whether subordinate or supervisor, may be held liable under Section 1983 only when his or her own actions have caused a constitutional deprivation. *OSU Student All. v. Ray*, 699 F.3d 1053, 1069 (9th Cir. 2012). Allegations regarding causation "must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation." *Leer v. Murphy*, 844

F.2d 628, 633 (9th Cir. 1988) (citations omitted). An individual "causes" a constitutional deprivation when he or she (1) "does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he [or she] is legally required to do that causes the deprivation" or (2) "set[s] in motion a series of acts by others which the [defendant] knows or reasonably should know would cause others to inflict the constitutional injury." *Lacey v. Maricopa Cty.*, 693 F.3d 896, 915 (9th Cir. 2012) (en banc) (citation and quotation marks omitted).

### 1. Officer Moya

"Inmates who sue prison officials for injuries suffered while in custody may do so under the Eighth Amendment's Cruel and Unusual Punishment Clause or, if not yet convicted, under the Fourteenth Amendment's Due Process Clause." *Castro v. Cnty. of Los Angeles*, 833 F.3d 1060, 1067-68 (9th Cir. 2016) (citing *Bell v. Wolfish*, 441 U.S. 520, 535, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979)). At the time of the events at issue, Plaintiff was serving a 90-day sentence for a probation violation (SAC ¶ 19); therefore, his section 1983 claim arises under the Eighth Amendment. The Eighth Amendment requires that prison officials take reasonable measures to guarantee the safety of prisoners, including protecting prisoners from violence at the hands of other prisoners. *Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994). The failure of prison officials to protect inmates from attacks by other inmates or from dangerous conditions at the prison violates the Eighth Amendment when two requirements are met: (1) the deprivation alleged is, objectively, sufficiently serious; and (2) the prison official is, subjectively, deliberately indifferent to inmate health or safety. *Id.* at 834. A prison official is deliberately indifferent if he knows of and disregards an excessive risk to inmate health or safety by failing to take reasonable steps to abate it. *Id.* at 837; *see also Clem v. Lomeli*, 566 F.3d 1177, 1182 (9th Cir. 2009) (plaintiff was entitled to a "failure to act" jury instruction where evidence showed prison officer heard plaintiff's call for help immediately prior to his beating and the officer took no steps to abate any risk to him). "Deliberate indifference entails something more than mere negligence but is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that

harm will result." *Hearns v. Terhune*, 413 F.3d 1036, 1040 (9th Cir. 2005) (internal quotations omitted) (citing *Farmer*, 511 U.S. at 835). "A prison official cannot be held liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the standard for criminal recklessness is met, i.e., the official knows of and disregards an excessive risk to inmate health or safety." *Williams v. Kernan*, No. 18-5787 WHA, 2021 WL 391327, at *4 (N.D. Cal. Feb. 4, 2021) (citing *Farmer*, 511 U.S. at 837.).

### a. Defendants' Motion for Summary Judgment as to Officer Moya

Here, there is evidence from which a trier of fact could reasonably infer that Officer Moya knew of an excessive risk to Plaintiff's safety and disregarded that risk by failing to take reasonable steps to abate it. Among other things, Officer Moya knew there were regular fights in the F Unit; knew it was not consistent with Santa Cruz Sheriff's Policy to house three inmates who had just been involved in a fight in a two-person cell and on RTC status; knew there was a reasonable possibility that three inmates who had just been involved in a fight and housed in a two-person cell on RTC status might turn their frustration and anger towards each other; and knew that Plaintiff was in greater danger of assault because he was the third person in a two-person cell. In addition, other inmates told Officer Moya that Love and Oliver did not belong in F Unit because they were causing fights and were dangerous. Officer Moya also admitted that he was concerned Oliver and Love would commit another assault; that he had a duty to report his concerns to a sergeant or watch commander; and that he failed to do so. It is also undisputed that Officer Moya did not let the three inmates out of their cell on October 12 and 13. The evidence summarized above forecloses granting Defendants' motion for summary judgment. *See Fargo v. City of San Juan Bautista*, 857 F.2d 638, 641 (9th Cir. 1988) ("When reasonable persons may disagree as to whether particular conduct constitutes negligence, gross negligence or recklessness, the question is one of fact to be decided by a jury." (footnote omitted)). Plaintiff need not show that Officer Moya acted or failed to act believing that Plaintiff would be assaulted by Oliver and Love. *See Farmer*, 511 U.S. at 844 ("Nor may a prison official escape liability for deliberate

Case No.: 5:19-cv-07300-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT

7

indifference by showing that, while he was aware of an obvious, substantial risk to inmate safety, he did not know that the complainant was especially likely to be assaulted by the specific prisoner who eventually committed the assault."); *see also Berg v. Kincheloe*, 794 F.2d 457, 459 (9th Cir. 1986) (holding that a prison official need not "believe to a moral certainty that one inmate intends to attack another at a given place at a time certain before that officer is obligated to take steps to prevent such an assault.").

Despite the evidence summarized above, Defendants argue that summary judgment is appropriate because Plaintiff never told Officer Moya that he felt unsafe being housed with Oliver and Love. However, the failure to give advance notice is not dispositive. *Farmer*, 511 U.S. at 848; *see also Hooker v. Gomez*, No. 16-7019 HSG, 2019 WL 3973750, at *7 (N.D. Cal. Aug. 22, 2019) ("a prisoner's failure to give prison officials advance notice of a specific threat is not dispositive with respect to whether prison officials acted with deliberate indifference to the prisoner's safety needs."); *Fanaro v. Cnty. of Contra Costa*, No. 19-3247 WHO, 2021 WL 2207363, at * 7 (N.D. Cal. June 1, 2021) (defendants' contention that neither of them "refused to respond to [plaintiff's] requests for a transfer or otherwise address his concerns" is a "red herring: the law has no such requirement."); *but see Thomas v. Hernandez*, No. 01-4685 TEH, 2003 WL 21518750, at *5 (N.D. Cal. June 30, 2003) (granting defendant summary judgment because among other things, plaintiff had not presented any evidence that he alerted defendants on the day of the incident that they were members of rival gangs and were a danger to each other).

Defendants next contend Officer Moya is not liable under § 1983 because Plaintiff chose to be housed with Love and Oliver in a two-person cell. It is questionable whether assumption of the risk could ever be a defense to a constitutional violation. *See Ganley v. Cnty. of San Mateo*, No. 06-3923 TEH, 2007 WL 902551, at *9 (N.D. Cal. Mar 22, 2007) ("assumption of the risk is not applicable to § 1983 claims"). In any event, the facts do not support such a defense. There is no evidence to suggest Plaintiff agreed to be housed with Love and Oliver knowing that they would physically and sexually assault him.

Case No.: 5:19-cv-07300-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT

8

Defendants further contend that Officer Moya is not liable under § 1983 for placing Plaintiff, Love and Oliver on RTC status because the denial of out-of-cell time for disciplinary reasons is constitutional, even if for extended periods of time based on new infractions. *See*, *e.g.*, *Noble v. Adams*, 646 F.3d 1138, 1148 (9th Cir. 2011) (finding qualified immunity appropriate because "in 2002 it would not have been clear to a reasonable officer that his or her conduct vis à vis the declaration of an emergency, the lockdown, or the curtailment of use of the exercise yard was unlawful in the situation he or she confronted."); *May v. Baldwin*, 109 F.3d 557, 565 (9th Cir. 1997) (deprivation of outdoor exercise for 21 days while in disciplinary segregation unit did not constitute violation of Eighth Amendment). Defendants' argument is misplaced because Plaintiff's claim against Officer Moya is not just based on placing the three inmates on RTC status. Instead, the three inmates' RTC status is only one of several facts which he relies on to establish that Officer Moya knew of and disregarded an excessive risk to Plaintiff's safety.

It is not lost on the Court that prisons are dangerous places, that the threat of violence is common, and that prison guards cannot realistically monitor every inmate at every moment. Further, factors that may increase or decrease the risk of inmate violence may be out of the prison officials' control. For example, the size of a prison, the configuration of the prison, and prison overpopulation are beyond the control of any one prison guard. Nevertheless, the Eighth Amendment imposes duties on prison officials to take "reasonable measures to guarantee the safety of the inmates." *Chisman v. Cnty. of Del Norte, Calif.*, No. 08-4793 MMC, 2010 WL 11635992, at * 5 (N.D. Cal. Mar. 24, 2010) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)). Here, the evidentiary record, although thin, may lead a reasonable trier of fact to conclude that Officer Moya violated Plaintiff's constitutional rights. Defendants' motion for summary judgment on the section 1983 claim against Officer Moya is denied.

        **b.**    **Plaintiff's Cross-Motion for Summary Judgment as to Officer Moya**

The evidentiary record is insufficient to grant Plaintiff's motion for summary judgment.

Case No.: 5:19-cv-07300-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT

This is because the evidence, when viewed in the light most favorable to Defendants, could lead a trier of fact to conclude that Officer Moya was unaware of an *excessive* risk to Plaintiff's safety. Further, as Defendants' point out, Plaintiff had numerous opportunities to inform Officer Moya that he felt unsafe, but did not so. Plaintiff knew how to request a transfer to another cell, but did not do so.

Plaintiff's cross-motions for summary judgment on the section 1983 against Officer Moya is denied.

### 2. Officer Mora

#### a. Defendants' Motion for Summary Judgment as to Officer Mora

Housing classification is one of the most critical jobs at the Jail to prevent inmate assaults. It is undisputed that Officer Mora was the only classification officer on duty at the time of the incident and that he understood that the risk of harm to inmates is increased when they are not properly housed. It is also undisputed that Officer Mora knew it was against Jail policy to house inmates on RTC status in F unit. Officer Mora also acknowledged during his deposition that it would be contrary to RTC and Ad Seg policy to place three inmates in one cell when they had just been accused of being in a fight. He also acknowledged that he was responsible for classifying Plaintiff, Love and Oliver after they assaulted an inmate, but failed to do so. Officer Mora told Officer Moya that he intended to transfer Plaintiff to P Unit on October 13, 2018.[5] However, he failed to follow through with the transfer because he was given another assignment. Officer Mora also knew that Love and Oliver were not supposed to be housed in F unit. Viewing this evidence in the light most favorable to Plaintiff, a trier of fact could conclude that Officer Moya knew of and disregarded an excessive risk to Plaintiff's safety.

Defendants contend that summary judgment is appropriate because Officer Mora did not

---

[5] For purposes of ruling on the parties' cross-motions, Defendants' hearsay objection to Officer Moya's testimony regarding his conversation with Officer Mora is overruled. Officer Moya's testimony is not hearsay under Federal Rule of Evidence 801(d)(2).

Case No.: 5:19-cv-07300-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT

10

have any interaction with Plaintiff. This overstates the evidence. Officer Mora only stated that he did not recall having any interaction with Plaintiff. Moreover, there is contradictory evidence on this issue: Plaintiff testified he told Officer Mora he needed to be moved out of F22 because Love and Oliver were violent.

Defendants next contend that Officer Mora was unaware of the assault of inmate Ivan Etell and unaware that Plaintiff was RTC'd with Love and Oliver. Defendants also contend that Officer Mora was not asked to reclassify Plaintiff or the others. Again, Defendants overstate the evidence. Officer Mora only stated that he did not recall being notified of the assault or the RTC status of the three inmates. Likewise, he did not recall being asked by anyone to reclassify Plaintiff, Love or Oliver.

Defendants further contend that even if Officer Mora knew he needed to reclassify Plaintiff and his cell mates, it would likely have made no difference in Plaintiff's housing. The evidence is to the contrary: Officer Mora told Officer Moya that he intended to transfer Plaintiff to P Unit.

Defendants' motion for summary judgment as to Officer Mora is denied.

### b. Plaintiff's Motion for Summary Judgment as to Officer Mora

Although the evidence regarding Officer Mora's conduct is largely undisputed, reasonable persons may disagree as to whether his particular conduct constituted negligence or gross negligence, or recklessness. Only reckless conduct violates section 1938. *Williams*, 2021 WL 391327, at *4. Whether Officer Mora's conduct rises to the level of reckless is a question of fact to be decided by a jury. *Fargo*, 857 F.2d at 641.

### B. Second Cause of Action: *Monell* Liability

Plaintiff's second cause of action alleges a Section 1983 claim against Defendant County of Santa Cruz pursuant to *Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658, 691 (1978). Local governments "can be sued directly under [section] 1983 for monetary, declaratory, or injunctive relief where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted

Case No.: 5:19-cv-07300-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT

11

and promulgated by that body's officers." *Id*. at 690. Plaintiff must plead and prove the following elements to establish his *Monell* claim: "(1) that [he] possessed a constitutional right of which he was deprived; (2) that the municipality had a policy, custom or practice; (3) that the policy, custom or practice amounted to deliberate indifference to [his] constitutional rights; and (4) that the policy, custom or practice was the moving force behind the constitutional violation." *Torres v. Saba*, No. 17-06587 SI, 2019 WL 111039, at *6 (N.D. Cal. Jan. 4, 2019) (citing *Plumeau v. School Dist. #40 Cnty. of Yamhill*, 130 F.3d 432, 438 (9th Cir. 1997) and *AE ex rel. Hernandez v. Cnty. of Tulare*, 666 F.3d 631, 636 (9th Cir. 2012)). For purposes of *Monell* liability, "policies can include written policies, unwritten customs and practices, [or] failure to train municipal employees on avoiding certain obvious constitutional violations." *Benavidez v. Cty. of San Diego*, 993 F.3d 1134, 1153 (9th Cir. 2021).

### 1.     Defendants' Motion for Summary Judgment on the *Monell* Claim

Defendants argue that they are entitled to summary judgment because the County does not have a policy, custom, rule, long standing practice, or regulation that allows for officers or others to violate an inmate's constitutional rights. Plaintiff is not alleging the County had a policy of violating the Eighth Amendment. Instead, Plaintiff's theory is that the County is liable for its failure to act. Under an omission theory of liability, "a plaintiff can allege that through its *omissions* the municipality is responsible for a constitutional violation committed by one of its employees, even though the municipality's policies were facially constitutional, [and] the municipality did not direct the employee to take the unconstitutional action." *Gibson v. Cnty. Washoe*, 290 F.3d 1175, 1186 (9th Cir. 2002). "A policy of inaction or omission may be based on failure to implement procedural safeguards to prevent constitutional violations." *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1143 (9th Cir. 2012).

Plaintiff's *Monell* claim is based on a failure to engage procedural safeguards to prevent constitutional violations. Plaintiff contends that due to overpopulation, the Jail routinely disregarded its housing plan by mixing minimum, medium, and maximum-security inmates in the

Case No.: 5:19-cv-07300-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT
12

same units and cells. Second, Plaintiff contends that the Jail routinely disregarded its housing plan by housing maximum security inmates in the F Unit, even though F Unit was the lowest security general population unit in the Jail. Third, Plaintiff contends that Defendants routinely disregarded the housing plan's express prohibition against RTC'ing any inmates in the F Unit. Defendants do not deny that the Jail mixed minimum, medium, and maximum-security inmates in the same units and cells; that the Jail housed maximum security inmates in the F Unit; and that the Jail RTC'd inmates in the F Unit. Nor do they challenge Plaintiff's contention that the Jail was not operating in compliance with California Code of Regulations Title 15. There is also evidence from which to infer that the failure to comply with the Jail's housing plan was a routine and longstanding practice. Viewing this evidence in the light most favorable to Plaintiff, a reasonable jury could find Defendants' *de facto* practice, custom or policy of failing to follow the housing plan constituted deliberate indifference. Constitutional deprivations may occur not just as a result of the actions of individual officers, but "as a result of the collective inaction of the municipal defendant." *Horton by Horton v. City of Santa Maria*, 915 F.3d 592, 604 (9th Cir. 2019) (quoting *Fairley v. Luman*, 281 F.3d 913 (9th Cir. 2002)).

Defendants argue housing decisions were the result of overcrowding. Defendants are correct that overcrowding is not a *per se* violation of the Eighth Amendment. *Ramirez v. City, Cnty. of San Francisco*, No. 89-4528 FMS, 1997 WL 33013, at *5 (N.D. Cal. Jan. 23, 1997). Nevertheless, overcrowding "can form the basis for an Eighth Amendment claim when it causes certain negative effects, such as . . . a disproportionate increase in violence." *Id.*; *see also Akao v. Shimoda*, 832 F.2d 119, 120 (9th Cir. 1987) (allegations of increase in stress, tension, communicable diseases, and confrontations between inmates due to overcrowding states Eighth Amendment claim). Plaintiff's *Monell* claim is based on more than just overcrowding; he contends that the failure to comply with housing policies resulted in inmate violence. A reasonable jury could find that the systemic jail mismanagement was the moving force behind the alleged constitutional violation. Furthermore, Defendants are not relieved of liability just because

Case No.: 5:19-cv-07300-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT

13

1  inmates caused Plaintiff's injuries. *See Fanaro*, 2021 WL 2207363, at * 7 (rejecting defendants'
2  contention that they were relieved of liability because the injuries were caused by Norteño inmates
3  because "[i]f that argument were accepted, no inmate violence claim under the Eighth Amendment
4  could ever succeed because the other inmate is always responsible for it."). The Jail's own
5  housing plan was designed to prevent the very type of inmate assault that occurred here.
6  Defendants' motion for summary judgment on the *Monell* claim is denied.

### 2. Plaintiff's Motion for Summary Judgment on *Monell* Claim

Plaintiff's cross-motion for summary judgment on the *Monell* claim is denied because although the evidence is largely undisputed, the Court finds that there are genuine issues of fact for trial, including but not limited to whether the County was on actual or constructive notice that its *de facto* practice, custom or policy of failing to follow the housing plan would likely result in a constitutional violation. *Tsao*, 698 F.3d at 1145. There is also a genuine issue as to whether the *de facto* practice, custom, or policy "caused the violation in the sense that the municipality could have prevented the violation with an appropriate policy." *Id*. at 1143 (citations omitted) (internal quotation marks omitted).

### C. Third, Fourth and Fifth Causes of Action

Plaintiff did not address any of County Defendants' challenges to the claims for violation of the Bane Act, negligence, and intentional infliction of emotional distress. The Court considers these claims abandoned. *Ramirez v. City of Buena Park*, 560 F.3d 1012, 1026 (9th Cir. 2009); *Jenkins v. Cty. of Riverside*, 398 F.3d 1093, 1095 n.4 (9th Cir. 2005). Accordingly, Defendants' motion for summary judgment is granted as to the three state law claims.

//
//
//
//

Case No.: 5:19-cv-07300-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT

14

## IV. CONCLUSION

Plaintiff's motion for summary judgment is DENIED. Defendants' motion for summary judgment is GRANTED as to the claims for violation of the Bane Act, negligence and intentional infliction of emotional distress, and DENIED in all other respects.

**IT IS SO ORDERED.**

Dated: July 19, 2022

EDWARD J. DAVILA
United States District Judge